**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM J. SPAHR, by and through
his co-conservators Steven D. Spahr
and Barbara J. Spahr,

       Plaintiff - Appellee,

v.

MELISSA CATHERINE SECCO,
a/k/a Melissa Radtke, a/k/a Melissa
Fisher, a/k/a Melissa Ball, a/k/a
Melissa Sweeney, a/k/a Melissa
Simms; U.S. BANCORP
INVESTMENTS, INC., a Minnesota
corporation f/k/a FBS Investment
Services, Inc.,

       Defendants - Appellants.

Nos. 00-1132 & 00-1152

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-M-1646)**

---

Dale A. Gaar, Denver, Colorado, for Plaintiff-Appellee.

Stephen D. Bell, Dorsey & Whitney LLP (Brian E. Casey, with him on the
opening and reply briefs; William D. Nelson and Gilbert M. Roman of
Rothgerber, Johnson & Lyons, L.L.P. on the supplemental brief), Denver,
Colorado, for Defendant-Appellant U.S. Bancorp Investments, Inc.

Francis V. Cristiano, Denver, Colorado, for Defendant-Appellant Melissa
Catherine Secco.

Before **LUCERO** , **McWILLIAMS** , and **REAVLEY** ,[*] Circuit Judges.

**LUCERO** , Circuit Judge.

In August 1999, William J. Spahr, through the co-conservators of his estate, brought suit in state court against U.S. Bancorp Investments, Inc., and Melissa Catherine Secco, alleging breach of fiduciary duty, fraud, constructive trust, and negligence.  Defendants removed the case to federal court and then filed a motion to stay the proceedings and order arbitration, pursuant to an agreement signed by Spahr in 1995.  On the basis that the parties' agreement, which contained an arbitration provision, was unenforceable due to Spahr's mental incapacity, the district court denied the motion.  This appeal presents the question, not yet considered in this circuit, whether the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, dictates that an arbitrator, rather than the court, decide a mental capacity challenge to a contract providing for arbitration of all disputes relating to that contract.  Exercising jurisdiction under 9 U.S.C. § 16, we conclude that it does not and affirm the district court's order denying arbitration.

---

[*]  The Honorable Thomas M. Reavley, United States Court of Appeals for the Fifth Circuit, sitting by designation.

# I

According to the complaint, Spahr "is an adult and unable to manage his property and financial affairs effectively because he suffers from dementia and Alzheimer's disease." (U.S. Bancorp's App. at 8 ¶ 2.) On June 6, 1995, he opened an investment account at U.S. Bancorp, formerly known as FBS Investment Services, Inc., through Secco, its employee. In doing so, Spahr signed a Cash Account Agreement promising to submit any controversy arising out of the account to arbitration:

> I agree that any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof, whether executed or to be executed within or outside of the United States, and whether asserted against broker-dealer and/or its present or former agents or employees, will be settled by arbitration before and in accordance with the then current rules of the National Association of Securities Dealers, Inc. [("NASD")].

(Id. at 82 ¶ 24.)

During the following year, Secco exploited Spahr's mental deficiencies and finagled him out of large sums of money and real estate. In doing so, Spahr claims, Secco breached her fiduciary duties as Spahr's broker, investment advisor, and trustee. Spahr also alleges that Secco defrauded and exercised undue influence over him.

Spahr seeks recovery from U.S. Bancorp under vicarious liability and negligence theories. Although much of the challenged conduct occurred after

U.S. Bancorp discharged Secco for violating NASD broker-dealer ethical guidelines, the complaint alleges that as an employee, Secco was "'legendary' in the stock brokerage community for convincing elderly men to loan her money in exchange for sex." ( Id. at 9 ¶ 13.) Spahr claims that U.S. Bancorp was negligent in employing her for "[a] . . . position that involved close contact with the clients of [U.S. Bancorp], handling funds of the clients of [U.S. Bancorp] and making investment recommendations for clients." ( Id. at 16 ¶ 78.) After the suit was filed, U.S. Bancorp filed a motion—which Secco sought to join—to stay the district court proceedings and compel arbitration based on the Cash Account Agreement signed by Spahr and subsequent customer agreements signed on his behalf. [1]

After a two-day evidentiary hearing on U.S. Bancorp's motion to compel arbitration, the district court concluded that the 1995 Cash Account Agreement "is not an enforceable agreement under the law [for] failure of [Spahr] to have sufficient mental capacity to understand the nature and effect of this contract."

---

[1] Three months after Spahr signed the Cash Account Agreement, he executed the William G. Spahr Trust, transferring a large amount of his assets, including his account at U.S. Bancorp, into this trust. Spahr named himself and Julius Wall as co-trustees. In this capacity, they signed a new Customer Agreement with U.S. Bancorp that contained an arbitration provision substantially identical to the one in Spahr's initial Cash Account Agreement. In January and February of 2000, Spahr's co-conservators, Barbara and Steven Spahr, invalidated the Spahr Trust and signed another Customer Agreement with U.S. Bancorp containing an identical arbitration agreement.

(Id. at 211.)  On this basis, the court denied U.S. Bancorp's motion to compel arbitration.  In response to U.S. Bancorp's argument that subsequent customer agreements signed by co-trustees of the Spahr Trust and Spahr's co-conservators require arbitration, the court concluded that "[t]he matter of later ratification has nothing to do with this case." (  Id. at 210.)  Denying Secco's request to join U.S. Bancorp's motion, the district court determined that the "allegations here deal with things that had nothing to do with . . . [Secco] being the customer's representative for [U.S. Bancorp]." (Secco's App. at 82.)

On appeal, U.S. Bancorp and Secco challenge the district court's rulings on the ground that Spahr's mental incompetence claim must be submitted to arbitration under the parties' agreement.  Defendants also challenge the district court's decision that Spahr was not obligated to arbitrate this dispute based on the subsequent customer agreements signed on his behalf.  Secco further contends that the district court misconstrued the arbitration provision to exclude the claims against her. [2]

**II**

We review de novo trial court denials of motions to compel arbitration.

---

[2]  We abated this appeal pending the Supreme Court's decision in        Howsam v. Dean Witter Reynolds, Inc.    , 123 S. Ct. 588 (2002).  That case has now been decided and the parties have filed supplemental briefs addressing its effect, if any, on the present appeal   .

-5-

Williams v. Imhoff, 203 F.3d 758, 762 (10th Cir. 2000). Motions to compel

arbitration are governed by 9 U.S.C. § 4,[3] which provides:

> The court shall hear the parties, and <u>upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,</u> the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.[4]

9 U.S.C. § 4 (emphasis added). This provision requires judicial resolution of

issues that go to the "making" of an agreement for arbitration. Prima Paint Corp.

v. Flood & Conklin Mfg., 388 U.S. 395, 403–04 (1967). It has long been a tenet

of federal arbitration law that "arbitration is a matter of contract and a party

cannot be required to submit to arbitration any dispute which he has not agreed so

---

[3] U.S. Bancorp's motion to stay the district court proceedings and compel arbitration is governed by the FAA. The coverage section of the FAA, 9 U.S.C. § 2, provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon any grounds as exist at law or in equity for the revocation of any contract.

[4] Section 4 further provides that, except where the dispute is within admiralty jurisdiction, either party may request a jury trial on the issue of whether an arbitration agreement has been made. In the instant case, the record reflects that all parties waived a jury trial.

to submit." AT&T Techs. v. Communications Workers of Am., 475 U.S. 643, 648 (1986). It follows that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam, 123 S. Ct. at 591. Although "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983), a court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the "making" of the agreement to arbitrate is not at issue, Prima Paint, 388 U.S. at 404.

In denying U.S. Bancorp's motion to compel arbitration, the district court concluded that Spahr's June 6, 1995, Cash Account Agreement was "not an enforceable agreement under the law." (U.S. Bancorp's App. at 211.) On appeal, U.S. Bancorp advances two arguments in support of its position that Spahr's mental capacity challenge should have been decided by arbitrators: It argues that the parties agreed to arbitrate arbitrability, and asserts that Spahr's mental capacity challenge goes to the validity of the entire contract, rather than merely the arbitration clause itself. For the latter reason, U.S. Bancorp contends that the Supreme Court's decision in Prima Paint dictates arbitration of Spahr's mental

capacity challenge. We reject both arguments.[5]

**A**

We first consider whether the agreement signed by Spahr in 1995 contains "clear and unmistakable evidence" that the parties agreed to submit the question of arbitrability to arbitration. In <u>First Options of Chicago, Inc. v. Kaplan</u>, the Supreme Court held that "[j]ust as the arbitrability of the merits of a dispute depends on whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." 514 U.S. 938, 943 (1995) (citation omitted). <u>First Options</u> concludes that we "should not assume that the parties agreed to arbitrate

---

[5] U.S. Bancorp also argues, in its supplemental brief, that Spahr's mental capacity challenge is not a "question of arbitrability" for the court to decide under the Supreme Court's recent decision in <u>Howsam</u>. In <u>Howsam</u>, the Supreme Court analyzed whether the court or arbitrator should construe an arbitration rule of the National Association of Securities Dealers ("NASD") providing that "no dispute shall be eligible for submission to arbitration . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute." 123 S.Ct. at 590. Holding that the arbitrators should apply this rule to the underlying controversy because it was not a "question of arbitrability" for the court to decide, the Court explained that questions of arbitrability have a "far more limited scope," <u>id.</u> at 592, and not every "potentially dispositive gateway question" is a "question of arbitrability," <u>id.</u> <u>Howsam</u>, however, did not address the precise question in the instant case, namely, when a challenge to a contract containing an arbitration clause puts the "making" of an agreement to arbitrate in issue under § 4 of the FAA. The Court's previous decision in <u>Prima Paint</u> squarely dealt with that question. Because <u>Howsam</u> is not controlling here, we analyze whether Spahr's mental capacity challenge puts the "making" of an agreement to arbitrate in issue under § 4 within the framework set forth in <u>Prima Paint</u>.

-8-

arbitrability unless there is clear and unmistakable evidence that they did so." Id. at 944. On this authority, this court has held that broad provisions to arbitrate all disputes arising out of or relating to the overall contract, like the one at issue here, do not provide the requisite clear and unmistakable evidence "within the four corners of the . . . [a]greement that the parties intended to submit the question of whether an agreement to arbitrate exists to an arbitrator." Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 780 (10th Cir. 1998); see also McLaughlin Gormley King Co. v. Terminix Int'l Co., 105 F.3d 1192, 1194 (8th Cir. 1997) (concluding that the arbitration clause in question did not clearly and unmistakably evidence the parties' intent to give the arbitrator power to determine arbitrability where the clause did not mention a "controversy over arbitrability"); cf. PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1199–1200 (2d Cir. 1996) (holding that a provision requiring arbitration of "any and all controversies" indicates the parties' intent to submit to arbitration the very question of arbitrability). We thus conclude that the district court properly set out to determine the arbitrability of Spahr's underlying claims, all of which fall within the scope of the arbitration clause if that provision proves to be enforceable.

**B**

This leads to our next inquiry: Does Spahr's mental capacity challenge to

the Cash Account Agreement place the "making" of the agreement to arbitrate at issue under § 4 of the FAA?  If Spahr's challenge did not place the "making" of the arbitration provision at issue within the meaning of § 4, the district court erred in denying U.S. Bancorp's otherwise valid motion to compel arbitration.  On the other hand, if Spahr's challenge did place the "making" of the arbitration agreement at issue, the district court acted properly in determining that the arbitration clause was unenforceable on the basis that Spahr lacked the mental capacity to enter into a contract.

In Prima Paint, the Supreme Court held that, in the context of a fraud in the inducement challenge, the "making" of an agreement for arbitration is at issue when there is an independent challenge to the arbitration clause itself.  388 U.S. at 403–04.  In that case, the parties entered into a consulting contract that included a promise to arbitrate any controversy arising out of the contract.  When one party sued to have the overall contract rescinded, alleging fraud in the inducement, the other party brought a motion in district court to stay the proceedings and compel arbitration.[6]  Affirming the district court's grant of a stay pending arbitration, the Second Circuit held that the "claim of fraud in the

---

[6] Whereas the party in Prima Paint brought suit to rescind the contract, in the instant case, we find nothing in the record that indicates a formal election by Spahr to rescind the 1995 Cash Account Agreement in its entirety.  In litigating the matter in the courts, however, Spahr has implicitly elected to rescind the arbitration clause of the contract.

-10-

inducement of the contract generally—as opposed to the arbitration clause itself—is for the arbitrators and not the courts." Id. at 400. "[E]xcept where the parties otherwise intend[,] arbitration clauses as a matter of law are 'separable' from the contracts in which they are embedded, and . . . where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud," held the Second Circuit. Id. at 402.

Resolving a split among circuits, the Supreme Court held that a fraudulent inducement claim that goes to the entire contract must be resolved by an arbitrator. It concluded that § 4 of the FAA, which divests the court of jurisdiction "upon being satisfied that the making of the agreement for arbitration . . . is not in issue," provided the answer. Id. at 403. "[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id. at 404.

U.S. Bancorp argues that because Spahr's mental incompetence claim challenges the Cash Account Agreement generally, rather than the arbitration provision in particular, the district court should have stayed its proceedings and directed arbitration of that dispute under Prima Paint. While we have not

-11-

considered the scope of <u>Prima Paint</u>'s applicability beyond claims of fraud in the inducement, other circuits have had occasion to do so.[7]  <u>See, e.g.</u>, <u>Primerica Life Ins. Co. v. Brown</u>, 304 F.3d 469, 472–73 (5th Cir. 2002) (holding that the arbitrator is to decide a mental capacity defense that does not specifically relate to the arbitration agreement ); <u>Jeske v. Brooks</u>, 875 F.2d 71, 75 (4th Cir. 1989) (holding that unconscionability and lack-of-consideration defenses challenging the entire contract, rather than the arbitration clause itself, are for the arbitrator to decide); <u>Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.</u>, 774 F.2d

---

[7] U.S. Bancorp argues that the <u>Prima Paint</u> rule should apply here because mental incapacity, like fraud in the inducement, is a contractual defense that merely renders a contract voidable.  "Unlike a void contract, a voidable contract is an agreement that unless rescinded imposes on the parties the same obligations as if it were not voidable." <u>Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.</u>, 263 F.3d 26, 31 (2d Cir. 2001).  It is true that many circuits have applied <u>Prima Paint</u> to voidable contracts—i.e., those where the contract was induced by fraud, mistake, or duress—but not to void contracts.  <u>See</u> <u>id.</u> at 32 (holding that a party is not entitled to a trial on the arbitrability of a voidable contract unless the party alleges that the arbitration clause itself is voidable, yet if a party alleges that the contract is void, it need not specifically allege that the arbitration clause itself is void); <u>Sphere Drake Ins. Ltd. v. All Am. Ins. Co.</u>, 256 F.3d 587, 591 (7th Cir. 2001) (concluding that "as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator"); <u>Sandvick AB v. Advent Int'l Corp.</u>, 220 F.3d 99, 107 (3d Cir. 2000) (drawing a distinction for purposes of applying <u>Prima Paint</u> "between contracts that are asserted to be void or non-existent . . . and those that are merely voidable"); <u>Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.</u>, 925 F.2d 1136, 1140–41 (9th Cir. 1991)("We read <u>Prima Paint</u> as limited to challenges seeking to avoid or rescind a contract—not to challenges going to the very existence of a contract that a party claims never have agreed to.").  As explained in further detail below, this distinction is not dispositive where, as here, a party challenges a contract containing an arbitration clause on the basis of mental incapacity.

524, 529 (1st Cir. 1985) (same with mutual mistake and frustration of purpose); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 398 (5th Cir. 1981) (same with duress and unconscionability); Commonwealth Edison Co. v. Gulf Oil Corp., 541 F.2d 1263, 1271 (7th Cir. 1976) (same with frustration of performance). In Unionmutual, the First Circuit concluded that "[t]he teaching of Prima Paint is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself. The basis of the underlying challenge to the contract does not alter the . . . principle." 774 F.2d at 529.

In Primerica, the Fifth Circuit recently concluded that a mental capacity defense to a contract that contains an arbitration clause is "part of the underlying dispute between the parties," and must be submitted to the arbitrator. 304 F.3d at 472. Relying on Prima Paint, the court held that "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute." Id. We disagree, and hold that the rule announced in Prima Paint does not extend to a case where a party challenges a contract on the basis that the party lacked the mental capacity to enter into a contract.

As noted, Prima Paint submits to arbitrators the resolution of a claim of

fraud in the inducement of the entire contract, as contrasted with a claim of fraud in the inducement of the arbitration agreement itself. Because the latter claim involves the "making" of an agreement to arbitrate under § 4, it is for the court to resolve. 388 U.S. at 403–04. Courts may apply this rule with ease when a party challenges a contract on the basis that it was induced by fraud because it is conceivable either that (1) he or she was fraudulently induced to agree to a contract containing an arbitration agreement; or (2) he or she was fraudulently induced to agree to the arbitration provision in particular. We cannot say the same when a party raises a mental capacity challenge, as it would be odd indeed if a party claimed that its mental incapacity specifically affected the agreement to arbitrate. We conclude, therefore, that the analytical formula developed in Prima Paint cannot be applied with precision when a party contends that an entire contract containing an arbitration provision is unenforceable because he or she lacked the mental capacity to enter into the contract. Unlike a claim of fraud in the inducement, which can be directed at individual provisions in a contract, a mental capacity challenge can logically be directed only at the entire contract.[8]

---

[8] Commentators have explained the distinction between challenging a contract on the basis of status (i.e., mental incapacity) and challenging a contract on the basis of the conduct of the bargaining parties (i.e., fraudulent inducement). See, e.g., E. Allan Farnsworth, Farnsworth on Contracts § 4.1 at 419–20 (2d ed. 1998). Farnsworth explains that courts "police" agreements against unfairness by placing limits on their enforceability, and that there are two established

(continued...)

-14-

In the present case, although Spahr signed the Cash Account Agreement, which contains a promise to arbitrate "any controversy arising out of or relating to" the agreement, he contended below and continues to argue here that the overall agreement is unenforceable because he was mentally incompetent when he entered into the contract. We hold that Spahr's mental incapacity defense naturally goes to <u>both</u> the entire contract and the specific agreement to arbitrate in the contract. Therefore, Spahr's claim that he lacked the mental capacity to enter into an enforceable contract placed the "making" of an agreement to arbitrate at issue under § 4 of the FAA. In determining that the June 5, 1995, Cash Account Agreement was unenforceable, the district court acted within its authority under § 4.[9]

### III

U.S. Bancorp argues that, even if the court properly determined that Spahr

---

[8](...continued)
perspectives for policing contractual agreements: (1) status, and (2) behavior. Status focuses on the <u>characteristics</u> of the party involved. Classic examples of the status perspective include restrictions on the capacity of a specified class of persons, such as minors and the mentally incompetent, whose power to contract has been limited in order to shield them from the consequences of unwise bargains. In contrast, the behavior perspective focuses on how the parties <u>acted</u> during the bargaining process; a classic example is the rule that allows a party to avoid a contract on the ground that the party has been induced to make the contract by misrepresentation. <u>Id.</u>

[9] Given this conclusion, we do not address Secco's argument that the district court erred in denying her request to join U.S. Bancorp's motion to stay the proceedings and compel arbitration.

lacked the mental capacity to enter into the 1995 Agreement, it erred in refusing to consider whether Spahr's representatives subsequently ratified the agreement to arbitrate. Alternatively, U.S. Bancorp asserts that the subsequent agreements signed by Spahr's representatives constituted a new and independent obligation for Spahr to arbitrate the present dispute. Specifically, U.S. Bancorp contends that subsequent Customer Agreements signed by Julius Wall, as co-trustee of the William G. Spahr Trust, and Steven and Barbara Spahr, as Spahr's co-conservators, require Spahr to arbitrate the present dispute. These agreements contained arbitration provisions identical to the one signed by Spahr when he opened his account at U.S. Bank, and require arbitration of "any controversy arising out of or relating to [Spahr's] account, to transactions with or for [him] or to this agreement. . . ." (U.S. Bancorp's App. at 85, 236.) The district court concluded that "[t]he matter of later ratification has nothing to do with this case." (Appellant's App. at 210.) We agree with the district court.

Challenging the district court's conclusion, U.S. Bancorp cites the Restatement (Second) of Contracts § 15(2), cmt. d, for the proposition that "[r]egardless of the other party's knowledge or good faith and regardless of the fairness of the terms, the incompetent person on regaining full capacity may affirm or disaffirm the contract, or the power to affirm or disaffirm may be exercised on his behalf by his guardian or after his death by his personal

-16-

representative." U.S. Bancorp contends that "[e]ven if Spahr was initially unable to agree to arbitrate, he essentially 'became competent again' when Wall as co-trustee and later the co-conservators (all of whom are unquestionably competent) were given the authority to act on Spahr's behalf with regard to the Spahr Account and USBI." (U.S. Bancorp's Br. at 32.) U.S. Bancorp points us to authority holding that one who <u>regains</u> mental capacity can ratify a contract. <u>See</u> <u>Brisacher v. Tracy-Collins Trust Co.</u>, 277 F.2d 519, 521 (10th Cir. 1960); <u>Norfolk</u> <u>S. Corp. v. Smith</u>, 414 S.E.2d 485, 487 (Ga. 1992); <u>Apfelblat v. Nat'l Bank</u> <u>Wyandotte-Taylor</u>, 404 N.W.2d 725, 727 (Mich. Ct. App. 1987). These cases are not persuasive here as there is no allegation that Spahr has regained his capacity since signing the 1995 Cash Account Agreement.

As further support for its ratification argument, U.S. Bancorp highlights the fact that both the Spahr Trust and the later account opened by Spahr's co-conservators remained at U.S. Bancorp, generating income on Spahr's behalf. However, U.S. Bancorp does not identify case law or other authority to show how these operative facts resulted in the ratification of the Customer Account Agreement signed by Spahr in 1995. Moreover, we see no evidence in the record that Wall (as co-trustee of the Spahr Trust) or Spahr's co-conservators ratified the arbitration provision in the 1995 Cash Account Agreement signed by Spahr while he was mentally incompetent. In short, we agree with the district court that U.S.

-17-

Bancorp's ratification argument lacks merit.

We further reject U.S. Bancorp's alternative argument that the district court erred because subsequent customer agreements, each of which contains an arbitration provision identical to the one Spahr signed when he initially opened his account, constitute an independent obligation for Spahr to arbitrate the instant dispute. U.S. Bancorp argues that an arbitration agreement can cover matters that arose prior to the signing of the agreement, citing R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534, 539 (5th Cir. 1992), Whisler v. H.J. Meyers & Co., 948 F. Supp. 798, 802 (N.D. Ill. 1996), and Shotto v. Laub, 632 F. Supp. 516, 522 (D. Md. 1986). While this proposition is not without support, the later customer agreements signed by Wall and Spahr's co-conservators do not cover the present dispute. The Customer Agreement signed by Wall was in relation to the Spahr Trust; none of Spahr's claims are related to the Spahr Trust; the third agreement, signed by Spahr's co-conservators, involves a different account number, and none of Spahr's claims arise out of that specific account. In fact, Spahr's co-conservators had already filed the present suit in state court when they signed the stated third account agreement.

## IV

For the foregoing reasons, we **AFFIRM** the district court's order denying U.S. Bancorp's motion to compel arbitration.

-18-