**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SUMMIT CONTRACTORS, INC.,

Plaintiff - Appellee,

v.

LEGACY CORNER, L.L.C. and
MIVON, L.L.C.,

Defendants - Appellants.

No. 04-6276

(W.D. Oklahoma)

(D.C. No. 04-CV-580-M)

**ORDER AND JUDGMENT**[*]

Before **HARTZ, McKAY**, and **PORFILIO**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal arises from a contract dispute between Summit Contractors, Inc. (Summit) and Legacy Corner, L.L.C. (Legacy). Mivon, L.L.C. (Mivon) was

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

not a party to the contract between Summit and Legacy, but Summit seeks collection of an account payable by Mivon, which was pledged to Summit as security. Defendants Legacy and Mivon appeal the district court's denial of their combined motion to stay and to compel arbitration. We have jurisdiction under the Federal Arbitration Act (FAA), 9 U.S.C. § 16(a)(1)(A) & (B), and affirm.

## I.  BACKGROUND

On March 31, 2003, Legacy and Summit entered into a "cost-plus" construction contract (Construction Contract). Under the terms of the Construction Contract, Summit agreed to build an apartment complex and Legacy agreed to pay construction costs up to $15,602,614. The Construction Contract incorporated by reference several supplementary documents, including American Institute of Architects (AIA) Document A201. Document A201 provides for mediation and arbitration of "[a]ny Claim arising out of or related to the Contract." Aplt. App. at 33, ¶ 4.5.1 & 34, ¶4.6.1. The Construction Contract also includes a merger clause, stating, "This Contract constitutes the entire agreement between the parties, and any previously existing contract concerning the work contemplated by the Contract Documents is hereby revoked." *Id.* at 18, Art. 1A.

Ordinarily, a cost-plus contract would provide a percentage profit for the contractor, payable as construction progressed. When they entered into the Construction Contract on March 31, 2003, however, Legacy and Summit also

entered into an Identity of Interest Agreement (Agreement), in which Summit agreed to accept a fixed fee in lieu of a percentage profit. The relevant clause from the Agreement provides for monthly payments of the fixed fee "as construction progresses," with the amount of the monthly payment determined by reference to "the amount of the draw paid under the Project Loan for the month." Agreement, Aplt. App. at 36. The Agreement "authorizes [Legacy] to withhold from the final payment to [Summit] a sum not to exceed 150% of the estimate of the cost of any incomplete items shown on the HUD Final Inspection Report . . . ." *Id.* at 37, ¶ 3(b). It also includes a "Choice of Forum" clause, which provides: "Any suit, action or proceeding with respect to this Agreement shall be brought in a court located in Oklahoma County, Oklahoma." *Id.* at 38, ¶ 6(c). And, like the Construction Contract, the Agreement has a merger clause, which states: "This Agreement embodies the entire agreement between the parties and supersede[s] all prior agreements and understandings, whether written or oral, implied or express, if any, relating to the subject matter herein." *Id.* at 39, ¶ 6(e).

On May 10, 2004, Summit filed a breach-of-contract claim in the United States District Court for the Western District of Oklahoma. The claim alleges that "Legacy has breached the [Agreement] by failing to make payments due to Summit in excess of $125,000.00[,] . . . [and that] Legacy has repudiated its

obligation for future payments that will be due under the Agreement." Compl.,
Aplt. App. at 5, ¶¶ 8, 9.

On May 25, 2004, Legacy initiated mediation proceedings with the
American Arbitration Association, claiming Summit "failed to perform concrete
work in conformance with the contract documents and is guilty of inexcusable
delay on the project." Request for Mediation, Aplt. App. at 44. According to
Legacy, this mediation is "a precondition to arbitration and [is] in accordance
with the construction contract documents[.]" Aplt. Br. at 6.

Relying on the FAA, 9 U.S.C. §§ 1-15, the Oklahoma Uniform Arbitration
Act, Okla. Stat. tit. 15, §§ 801 et seq., and the arbitration clause of AIA
Document A201, Defendants filed a motion to stay and to compel arbitration.
The district court denied both forms of relief and Defendants appeal.

## II.    DISCUSSION

### A.    Motion to Compel Arbitration

"We review de novo trial court denials of motions to compel arbitration.
Motions to compel arbitration are governed by [the FAA,] 9 U.S.C. §4 . . . ."
*Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (internal citation omitted).[1]

---

[1]9 U.S.C. § 4 provides in relevant part:
The court shall hear the parties, and upon being satisfied that the
making of the agreement for arbitration or the failure to comply
therewith is not in issue, the court shall make an order directing the

(continued...)

-4-

Although federal policy under the FAA strongly favors arbitration for dispute resolution, "when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). An agreement to arbitrate a particular dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Spahr*, 330 F.3d at 1269 (internal quotation marks omitted). "Although the parties' intent controls regarding whether they agreed to arbitrate a particular dispute, determining their intent is a question of law for the court to decide." *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995).

In determining whether the parties agreed to arbitrate a particular issue, we "generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Riley Mfg. Co.*, 157 F.3d at 780 n.5 (same); 1 Domke on Commercial Arbitration § 8:4 (2005) ("A federal court should look to the state law that normally governs the formation of contracts to determine whether a valid

---

[1](...continued)
parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

agreement to arbitrate arose between the parties."). Under Oklahoma law, which, the parties agree, governs here, "[t]he cardinal rule in contract interpretation is to determine and to give effect to the contractual intent of the parties." *Sunrizon Homes, Inc. v. Am. Guar. Inv. Corp.*, 782 P.2d 103, 107 (Okla. 1988); Okla. Stat. Ann. tit. 15, § 152 ("A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."). "Where the contract is in writing and the language is clear and unambiguous, such intent must be determined from the words used." *Humphreys v. Amerada Hess Corp.*, 487 F.2d 800, 802 (10th Cir. 1973) (citing Okla. Stat. Ann. tit. 15, §§ 152-54); Okla. Stat. Ann. tit. 15, § 155 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article.") "It is the general rule in Oklahoma that two or more writings between the same parties executed substantially at the same time and relating to the same subject-matter are to be considered together in arriving at the intent of the parties, and it is not essential that the instruments refer in express terms to each other if in point of fact they are parts of a single transaction." *Morgan v. Griffith Realty Co.*, 192 F.2d 597, 599 (10th Cir. 1951); *see* Okla. Stat. Ann. tit. 15, § 158 ("Several contracts relating to the same matters, between the

same parties, and made as parts of substantially one transaction, are to be taken together."); *see also F.D.I.C. v. Hennessee*, 966 F.2d 534, 537 (10th Cir. 1992).

Defendants contend that (1) the district court erred in not construing the Construction Contract and the Agreement together and (2) the district court erred in concluding that the arbitration clause incorporated into the Construction Contract did not govern disputes arising from the Agreement. We need not reach Defendants' first issue, however, because, as we explain below, even when the two documents are considered together, their clear and unambiguous language indicates that the parties did not intend to arbitrate issues arising under the Agreement.

To begin with, both documents contain merger clauses. Typically, merger clauses are strong evidence that the parties did not intend to include terms not expressly incorporated into the document containing the clause. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 665 (7th Cir. 2002) ("[T]he presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them" (internal quotation marks omitted)); 11 Richard A. Lord, *Williston on Contracts* § 33:21 (4th ed. 2004) ("A merger clause tends, of course, to establish the intent of the parties that the writing shall be an integration of their agreement."). Even more telling is the failure of the Construction Contract to incorporate or even mention the Identity of

Interest Agreement. The Construction Contract provides: "The Contract between the parties is set forth in the 'Contract Documents,' which consist of this Agreement, the Drawings and Specifications, which include the current edition of AIA Document A201, 'General Conditions of the Contract for Construction,' and Form HUD-2554, 'Supplementary Conditions of the Contract for Construction.'" Construction Contract, Aplt. App. at 18, Art. 1A. The Identity of Interest Agreement is conspicuously missing from this list. Similarly, although the Agreement acknowledges the Construction Contract, it does not expressly incorporate its terms or those of AIA Document A 201, the document containing the arbitration clause. Finally, the Agreement's choice-of-forum clause is compelling evidence against an intent to arbitrate breaches of the Agreement. It states that "[a]ny suit, action or proceeding with respect to this Agreement shall be brought in a *court* located in Oklahoma County, Oklahoma." Agreement, Aplt. App. at 38, ¶ 6(c) (emphasis added). Given the express language of the documents, we hold that the parties did not intend to arbitrate disputes arising under the Agreement. Thus, we agree with the district court that Summit's breach-of-contract claim alleging Legacy's failure to pay its monthly fee under the Agreement is not arbitrable. *See Spahr*, 330 F.3d at 1269 ("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.")

## B.    Denial of Motion to Stay

"The decision whether to stay the litigation of the non-arbitrable issues is a matter largely within the district court's discretion to control its docket." *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992); *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration.  That decision is one left to the district court . . . as a matter of its discretion to control its docket.").  Defendants argue that the district court erred in refusing to stay Summit's action on the Agreement pending arbitration because the performance issues are critical to determining whether Summit earned its fee under the Agreement.  Summit counters that Legacy's obligation to pay the monthly fee is not conditioned upon Summit's performance under the Construction Contract but "upon Legacy's receipt of the monthly draw [under the Project Loan.]"  Aplee. Br. at 15.  Summit alleges that "because the draw is not issued to Legacy until . . . approval by the Project Architect, the question of adequacy of performance is already resolved."  *Id.* at 16 n.4.

We do not reach the merits of this issue, however, because Defendants have not provided an adequate record.  "A party who seeks to reverse the decision of a district court must provide an adequate record for this court to determine that

error was committed." *Travelers Indemnity Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1119 (10th Cir. 2003). We may decline to consider an issue "[w]hen the party asserting an issue fails to provide a record sufficient for considering that issue[.]" 10th Cir. R. 10.3(B). Moreover, under Tenth Circuit Rule 30.1(A)(1) "[t]he appellant must file an appendix sufficient for considering and deciding the issues on appeal. The requirements of Rule 10.3 for the contents of a record on appeal apply to appellant's appendix."

Nothing in the Agreement indicates that the monthly fee owed by Legacy to Summit is conditioned upon Summit's performance under the Construction Contract. The amount of the monthly fee is instead dependent on the amount of the monthly draw "under the Project Loan." Agreement, Aplt. App. at 36. The pertinent language of the Agreement states:

> [Legacy] shall pay [Summit] a fee in the amount of $467,853.00. The fee will be payable monthly as construction progresses, starting on the 10th day following the date on which the third monthly draw is paid to [Summit] under the Project loan and continuing monthly thereafter (i.e. on the 10th day following each subsequent payment date under the Project Loan) until the fee is paid in full. The amount of each monthly payment will be a percentage of the full fee amount. *The percentage for each monthly payment shall be calculated by taking the amount of the draw paid under the Project Loan for that month (the "Advance"), and dividing the Advance by $15,602.614.* The resulting percentage will then be applied to the $467,853 fee amount, and an amount equal to 100% of that amount will be owed to [Summit] that month.

*Id.* At ¶ 1 (emphasis added).

-10-

Despite the evident importance of determining whether the monthly draw paid under the Project Loan is conditioned on performance of the Construction Contract, Defendants have included nothing in their appendix to enlighten the court on the terms or conditions of the Project Loan. Thus, we have no way of knowing whether Summit's alleged poor performance of concrete work or inexcusable delay are central to the resolution of Summit's breach-of-contract claim. The failure of Defendants to include the Project Loan in the appendix "deprives them of the right to challenge the judgment of the district court." *Travelers Indemnity Co.*, 340 F.3d at 1121.

## III.   CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order denying Defendants' motions to stay and to compel arbitration.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

-11-