2014 OK CIV APP 24

**Walker BARK and Debra Yeahquo, Plaintiffs/Appellees,**

v.

**LAKE COUNTRY CHEVROLET CADILLAC, LLC d/b/a Lake Country Chevrolet Cadillac, Gregg Woods, Brittany Epperson, Chris Leonard, Clark Blake and John Doe, Defendants/Appellants.**

**No. 111604.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 5, 2014.

Barry G. Reynolds, Shannon P. Wheeler, Titus Hillis Reynolds Love Dickman & McCalmon, Tulsa, Oklahoma, for Appellants.

Chadwick Smith, Tahlequah, Oklahoma, for Appellees.

LARRY JOPLIN, Presiding Judge.

¶1 Defendants/Appellants Lake Country Chevrolet Cadillac, LLC d/b/a Lake Country Chevrolet Cadillac, Gregg Woods, Brittany Epperson, Chris Leonard, and Clark Blake (individually, by name, or, collectively, Defendants), seek review of the trial court's order denying their motion to compel arbitration on the contract and tort claims of Plaintiffs Walker Bark and Debra Yeahquo arising out of contracts for the sale of automobiles by Defendants. In this appeal, Defendants assert that the contracts and federal substantive law expressly require the arbitrator to resolve the question of Plaintiff Bark's capac-

ity to make a contract and agree to arbitration, and the trial court erred in holding otherwise.

¶ 2 Plaintiffs brought suit to rescind two agreements for the purchase of automobiles from Defendant Lake Country Chevrolet Cadillac, and to recover actual and punitive damages for alleged fraud. Defendants filed a motion to compel arbitration, and argued that, inasmuch as the purchase agreements contained provisions requiring the resolution of disputes by arbitration, Plaintiffs' claims must be submitted to arbitration for resolution.[1]

¶ 3 Plaintiffs responded. To their response, Plaintiffs attached evidentiary materials argued to show that Plaintiff Bark suffered from a service-related disability and cognitive impairment. Plaintiffs asserted that, as a result of Plaintiff Bark's diminished capacity and Defendants' fraud, misrepresentations and concealments, Plaintiff Bark could not and did not knowingly agree to any terms of the agreements, and that, absent a meeting of the minds on all material terms, there were no valid contracts and no valid agreements to arbitrate. So, said Plaintiffs, given the issues of fraud surrounding the execution of the agreements, and the validity of Plaintiff's assent to waive his right to jury trial and resolve disputes by arbitration, the motion to compel arbitration should be denied. Alternatively, Plaintiffs requested an evidentiary hearing on the issues of Bark's cognitive impairment, his understanding and validity of his assent to the purchase agreements.

¶ 4 Defendants replied. Defendants first asserted that, beyond the bare allegations, Plaintiffs failed to allege or demonstrate a factual basis for the allegation of Plaintiff Bark's diminished capacity. Defendants secondly asserted that the question of whether the agreements as a whole were valid constituted a question for resolution by an arbitrator. Defendants lastly asserted that Plaintiffs had not alleged nor proven a claim for fraud in the execution with sufficient particularity as to justify denial of the motion to compel. Defendants argued the trial court possessed the discretion to hold a hearing to determine whether a valid agreement to arbitrate existed, and that the trial court should exercise its discretion in the present case.

¶ 5 Plaintiffs again responded. Plaintiffs argued the Federal Arbitration Act, 9 U.S.C. § 2, specifically recognized that an agreement to arbitrate could be avoided "upon grounds as exist at law or in equity for the revocation of any contract," and included an inquiry into the capacity of Plaintiff Bark to validly agree to the terms of the agreement. So, argued Plaintiffs, if the court determined Bark lacked the capacity to agree, or the transaction was affected by fraud, arbitration could not be ordered.

¶ 6 The parties appeared with counsel for hearing. Upon consideration of the parties' submissions and arguments, but without presentation of other evidence, the trial court denied Defendants' motion to compel, and Defendants appeal.[2]

---

1. Both agreements contained a dispute resolution clause which provided:

    Any controversy, claim or dispute between PURCHASER and DEALER arising out of, or related to this sale, any financing contract or agreement executed by the PURCHASER in conjunction with the sale of the vehicle described herein, or any alleged breach thereof, shall be submitted to binding arbitration, with the American Arbitration Association pursuant to the Federal Arbitration Act, Title 9, U.S.C. § 1, et seq. Arbitration shall be conducted in compliance with the rules of American Arbitration Association. Any evidence submitted by the parties shall be accepted by the arbitrator in conformity with the Federal Rules of Evidence. The award rendered by the arbitrators will be entered as a judgment in a court having jurisdiction over the parties. Both the PURCHASER and DEALER acknowledge and un-

    derstand that they are waiving their right to a jury trial by entering into this agreement. It is agreed between the parties that the party filing the arbitration shall be responsible for the filing fee. The cost of the arbitrator's fee shall be equally divided between the parties. The prevailing party of any dispute submitted to arbitration shall be entitled to attorney fees and costs as allowed by Oklahoma statutes.

2. *See*, Okla.Sup.Ct.R. 1.60(i), 12 O.S., Ch. 15, App. 1 ("Orders of the district court that are interlocutory and may be appealed by right in compliance with the rules in this part are those that: ... Are made under the provisions of 12 O.S. § 1879"); 12 O.S. § 1879(A)(1) ("An appeal may be taken from: An order denying a motion to compel arbitration; ...").

■ ¶ 7 Under the FAA, there are basically two types of challenges. One type challenges "the validity of the agreement to arbitrate," while the second challenges "the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444, 126 S.Ct. 1204, 1208, 163 L.Ed.2d 1038 (U.S.Fla.2006).

■ ¶ 8 Challenges to the validity of the agreement to arbitrate fall within the FAA, § 2. Under § 2 of the FAA, "an arbitration provision in a contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.'" *Harris v. David Stanley Chevrolet, Inc.,* 2012 OK 9, ¶ 8, 273 P.3d 877, 878. (Citations omitted.) Pursuant to § 2, "'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute,' through the use of 'general state-law principles of contract interpretation.'" *Harris,* 2012 OK 9, ¶ 8, 273 P.3d at 878. (Citations omitted.) So, if the court determines (1) the parties have agreed to arbitrate, and (2) the dispute falls within the scope of the arbitration agreement, § 2 requires all other questions of the contract's "validity as a whole" to be submitted to the arbitrator:

> Where a contract affecting interstate commerce contains an arbitration provision and does not provide otherwise, the FAA requires the question of the contract's validity as a whole to be submitted to arbitration. Under [§ 2 of] the FAA, issues relating only to the validity of the arbitration provision are generally subject to a judicial determination.

**3.** "The courts will not require a party to submit a controversy to arbitration where it has not been so agreed."

**4.** Section 4 provides in pertinent part:
> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply

*Rogers v. Dell Computer Corp.,* 2005 OK 51, ¶ 13, 138 P.3d 826, 829–830. (Citations omitted.) (Footnote omitted.)

■ ¶ 9 However, "[t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye Check Cashing, Inc.,* 546 U.S. at 444, 126 S.Ct. at 1208, fn. 1. This is so because arbitration cannot be compelled absent an agreement of the parties. *See, e.g., Oncology & Hematology P.C. v. U.S. Oncology, Inc.,* 2007 OK 12, ¶ 22, 160 P.3d 936, 944–945.[3] Consequently, if a valid contract containing an agreement to arbitrate was never formed between the parties, arbitration cannot be compelled, and under § 4 of the FAA,[4] it is for the court to decide whether a contract was ever formed:

> [I]t is for courts to decide whether the alleged obligor ever signed the contract, *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851 (C.A.11 1992), whether the signor lacked authority to commit the alleged principal, *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99 (C.A.3 2000); *Sphere Drake Ins. Ltd. v. All American Ins. Co.,* 256 F.3d 587 (C.A.7 2001), and whether the signor lacked the mental capacity to assent, *Spahr v. Secco,* 330 F.3d 1266 (C.A.10 2003).

*Buckeye Check Cashing, Inc.,* 546 U.S. at 444, 126 S.Ct. at 1208, fn. 1.

■ ¶ 10 So, if the court determines (1) the parties have validly agreed to arbitrate disputes, and (2) the particular dispute falls within the scope of the agreement to arbitrate, § 2 of the FAA requires arbitration and questions concerning the contract's "validity as a whole" are submitted to the arbitrator. *Rogers,* 2005 OK 51, ¶ 13, 138 P.3d at 829–830; *Prima Paint Corp. v. Flood & Conklin Mfg.Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). If, however, there exists a question of whether a valid

therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof....

contract containing an agreement to arbitrate was ever formed between the parties, § 4 requires the court to determine whether a valid contract was formed before the question of an agreement to arbitrate may be considered. *Buckeye Check Cashing, Inc.,* 546 U.S. at 444, 126 S.Ct. at 1208, fn. 1. As the Tenth Circuit Court of Appeals observed in *Spahr v. Secco,* supra:

> As noted, *Prima Paint* submits to arbitrators the resolution of a claim of fraud in the inducement of the entire contract, as contrasted with a claim of fraud in the inducement of the arbitration agreement itself. Because the latter claim involves the "making" of an agreement to arbitrate under § 4 [of the FAA], it is for the court to resolve. 388 U.S. at 403–04, 87 S.Ct. 1801. Courts may apply this rule with ease when a party challenges a contract on the basis that it was induced by fraud because it is conceivable either that (1) he or she was fraudulently induced to agree to a contract containing an arbitration agreement; or (2) he or she was fraudulently induced to agree to the arbitration provision in particular. We cannot say the same when a party raises a mental capacity challenge, as it would be odd indeed if a party claimed that its mental incapacity specifically affected the agreement to arbitrate. We conclude, therefore, that the analytical formula developed in *Prima Paint* cannot be applied with precision when a party contends that an entire contract containing an arbitration provision is unenforceable because he or she lacked the mental capacity to enter into the contract. Unlike a claim of fraud in the inducement, which can be directed at individual provisions in a contract, a mental capacity challenge can logically be directed only at the entire contract.
>
> In the present case, although Spahr signed the Cash Account Agreement, which contains a promise to arbitrate "any controversy arising out of or relating to" the agreement, he contended below and continues to argue here that the overall agreement is unenforceable because he was mentally incompetent when he entered into the contract. We hold that Spahr's mental incapacity defense naturally goes to both the entire contract and the specific agreement to arbitrate in the contract. Therefore, Spahr's claim that he lacked the mental capacity to enter into an enforceable contract placed the "making" of an agreement to arbitrate at issue under § 4 of the FAA. In determining that the June 5, 1995, Cash Account Agreement was unenforceable, the district court acted within its authority under § 4.

*Spahr,* 330 F.3d at 1272–1273. (Footnotes omitted.)

¶ 11 In the present case, there can be little doubt that the sales of automobiles is a matter affecting interstate commerce, so that, if the parties validly agreed to arbitrate disputes, § 2 of the FAA would normally require arbitration and questions concerning the "validity" of the contract "as a whole" to be submitted to an arbitrator. However, because Plaintiff placed his capacity to "make" a contract at issue, § 4 of the FAA required the court to determine whether, in light of the Plaintiff's alleged lack of capacity, a valid contract between Plaintiff and Defendant was ever concluded, because, without the formation of a valid contract including an agreement to arbitrate, arbitration could not be compelled.

¶ 12 Generally, the question of whether there exists a valid, enforceable agreement to arbitrate constitutes one of law to be reviewed by a *de novo* standard, without deference to the lower court. *Oncology & Hematology P.C.,* 2007 OK 12, ¶ 19, 160 P.3d at 944; *Rogers,* 2005 OK 51, ¶ 18, 138 P.3d at 831. However, "an application to compel arbitration may present questions of fact and law as to the existence or the enforceability of an arbitration agreement," and "[w]here the facts are controverted, mixed questions of fact and law ... require [the application of] deferential review standards." *Bruner v. Timberlane Manor Ltd. Partnership,* 2006 OK 90, ¶ 8, 155 P.3d 16, 20. The " 'deferential standard of review applies to resolutions of disputed facts when supported by reasonable evidence.' " *Feightner v. Bank of Okla.,* 2003 OK 20, ¶ 3, 65 P.3d 624, 627.

¶ 13 In *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, the Seventh Circuit Court of Appeals affirmed the district court's denial of a motion to compel arbitration after the court determined that an agent lacked authority to bind the principal to arbitrate, holding the "courts, rather than arbitrators, usually determine whether the parties have agreed to arbitrate." 256 F.3d at 589. In *Sandvik AB v. Advent Int'l Corp.*, the Third Circuit Court of Appeals similarly affirmed the district court's denial of a motion to compel upon a determination the agent lacked authority to bind the principal to arbitration. 220 F.3d at 101.

¶ 14 In *Chastain v. Robinson–Humphrey Co.*, the Eleventh Circuit Court of Appeals affirmed the district court's denial of the motion to compel immediate arbitration pending a determination, not by an arbitrator, but by the district court after an evidentiary hearing, of whether the plaintiff ever actually signed the agreement requiring arbitration. 957 F.2d at 854–856. And, in *Spahr*, the district court conducted an evidentiary hearing spanning two days on the issue of the plaintiff's "mental capacity to understand the nature and effect of" the contract which included an arbitration provision before denying the motion to compel arbitration, an order which the Tenth Circuit Court of Appeals affirmed. 330 F.3d at 1268–69.

¶ 15 In the present case, Plaintiffs alleged in their petition, and presented some evidence on motion to compel argued to demonstrate circumstances calling into question Plaintiff Bark's ability to comprehend the nature of his rights and obligations generally, and under the purchase agreement specifically. However, the trial court conducted no substantial evidentiary hearing, and, in its order denying the motion to compel, the trial court set out no findings of fact or conclusions of law explaining the basis for its ruling.

¶ 16 Under these circumstances, and without an evidentiary hearing on the issue of Plaintiff's capacity to validly and knowingly assent to the provisions of the purchase agreements, including the agreement to arbitrate disputes, we are unable to determine, in the exercise of our *de novo* standard of re-view, whether a contract requiring arbitration was ever concluded. The parties must be afforded an opportunity to develop a factual basis for a determination of whether there exists a valid contract requiring arbitration, for without such a valid agreement between the parties, arbitration cannot be required.

¶ 17 We hold the trial court was authorized to inquire into whether a valid contract, including an agreement to arbitrate, was ever reached between the Plaintiffs and Defendants. However, neither Plaintiffs nor Defendants presented any reasonable evidence to permit an informed decision on the issue of any impediment to formation of a contract posed by Plaintiff Bark's alleged mental impairment.

¶ 18 We therefore hold the order of the trial court should be reversed, and the cause remanded for the purpose of conducting an evidentiary hearing on the issue of Plaintiff's capacity to make a contract and assent to arbitration. The order of the trial court is therefore REVERSED, and the cause RE-MANDED FOR FURTHER PROCEEDINGS.

HETHERINGTON, V.C.J., and BUETTNER, J., concur.