**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2004**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATIONAL AMERICAN
INSURANCE COMPANY,

    Plaintiff - Appellee,

v.

SCOR REINSURANCE COMPANY,

    Defendant - Appellant.

No. 03-6079

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-02-1312-R)**

---

Susan A. Stone, Sidley Austin, Brown & Wood, Chicago, Illinois (Joshua G. Urquhart of Sidley, Austin, Brown & Wood, Chicago, Illinois; Larry Derryberry, Stephen G. Solomon, and George W. Velotta II of Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, Oklahoma, with her on the briefs).

R. Patrick Gilmore, Chandler, Oklahoma (Clinton D. Russell, Stratton Taylor, and Mark H. Ramsey, Claremore, Oklahoma, with him on the brief).

---

Before **TACHA**, Chief Circuit Judge, **McKAY** and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

This appeal involves a dispute between two insurance companies regarding the scope of an arbitration clause. Appellee National American Insurance Company ("NAICO") filed a complaint alleging that Appellant SCOR Reinsurance Company ("SCOR") is liable for losses on two surety bonds, which the parties refer to as the "Geismar" and "Chalmette" bonds (collectively the "Bonds"). Aplt. App., Tab No. 1, at 2. SCOR filed a motion to dismiss and to compel arbitration on the ground that NAICO's allegations fall within the scope of an arbitration clause contained in a reinsurance agreement in which SCOR agreed to reinsure NAICO's surety bond program (the "Treaty"). Id., Tab No. 13, at 1-9. The district court denied SCOR's motion "because Plaintiff's claims are predicated on SCOR's independent commitment to serve as co-surety on the Geismar and Chalmette Bonds, independent of the treaty or treaties (which contains an arbitration clause) and thus are not within the scope of the agreement to arbitrate." Id., Tab No. 25, at 1. SCOR appeals this order.

*Background*

NAICO is an insurance company licensed to write surety bonds, and SCOR is an insurance company which primarily writes reinsurance. SCOR incurred two legal obligations relevant to this appeal. SCOR's first obligation is memorialized in the Treaty, a reinsurance agreement which covered the Bonds. The Treaty is effective April 1, 1999, and was signed by SCOR on November 2, 1999. Aplt.

-2-

App., Tab No. 21, Ex. B, at 11. The Treaty contains the following arbitration clause: "Any irreconcilable dispute between the parties to this Agreement will be arbitrated in Chandler, Oklahoma in accordance with the attached Arbitration Clause No. 22-01.1." Id. at Article 20.

SCOR's second obligation is to act as co-surety for the Bonds. This obligation is memorialized in a Hold Harmless and Indemnity Agreement, which was entered into on August 24, 1999. Aplt. App., Tab No. 21, Ex. A at 2. In this Agreement, SCOR "agree[d] to act as a co-surety with NAICO on [the Bonds]." Id. at 1. This obligation was undertaken "as an accommodation to NAICO in specific instances in which the bond obligees' requirements necessitate a Best's Rating higher than NAICO's and/or a treasury underwriting limitation greater than NAICO's . . . ." Id. In consideration for SCOR's obligation to act as co-surety, NAICO agreed to hold SCOR harmless and to indemnify SCOR from any losses relating to the Bonds. Id. On December 4, 2000, a Termination Endorsement was executed in which the parties agreed that SCOR had no liability for losses discovered after April 1, 2000. Id. Ex. E, at 1. In the Termination Endorsement, the parties agreed that "ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED." Id.

On September 20, 2002, NAICO filed its complaint, alleging that SCOR is liable for losses relating to the Bonds. Aplt. App., Tab No. 1. NAICO argues

that because its allegations relate to SCOR's co-surety obligation under the Hold Harmless Agreement, not its reinsurance obligation under the Treaty, it is not required to arbitrate. SCOR argues that the two obligations are part of a single transaction and that the Treaty's arbitration provision encompasses the co-surety obligation under the Hold Harmless Agreement.

*Discussion*

We review a district court's denial of a motion to compel arbitration *de novo.* Spahr v. Secco, 330 F.3d 1266, 1269 (10th Cir. 2003); Avedon Eng'g Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997). The Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). Under this policy, the "'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Spahr, 330 F.3d at 1269-70 (quoting Moses, 460 U.S. at 24-25). However, "a court may compel arbitration of a particular dispute . . . only when satisfied that the 'making' of the agreement to arbitrate is not at issue." Id. at 1270.

In this case, NAICO does not dispute that it made a valid and enforceable agreement to arbitrate any disputes arising out of the Treaty. NAICO also does not dispute that the Treaty containing the arbitration clause was effective about

five months before the Hold Harmless Agreement. Instead, NAICO argues that the Treaty's arbitration clause is not invoked because its "claims are independent of the Treaty" and arise solely out of SCOR's co-surety obligation found in the Hold Harmless Agreement. Aple. Br. at 6.

Since the parties agree that an agreement to arbitrate disputes exists between them, we first look to the scope of that agreement and then determine whether NAICO's claims fall within its scope. The Treaty's arbitration clause is broad. It requires that "[a]ny irreconcilable dispute between the parties to this Agreement," including SCOR and NAICO, be arbitrated. Aplt. App. Tab No. 21, Ex. B at Article 20. It then provides that the arbitration will be done "in accordance with the attached Arbitration Clause No. 22-01.1," (the "Attached Clause").

NAICO argues that the first sentence of the Attached Clause limits the scope of arbitrable issues by stating that "[a]s a condition precedent to any right of action hereunder, any irreconcilable dispute between the parties to this Agreement" will be arbitrated. Id. at Arbitration Clause 22-01.1. NAICO argues that the word "hereunder" means that only issues arising out of the Treaty are subject to arbitration. We disagree. The Treaty requires that "any irreconcilable dispute" be arbitrated, without any limiting language. The Attached Clause is a procedural clause that addresses how the arbitration takes place, not the scope of

-5-

arbitrable issues. This is evident from the nature of the Attached Clause, which provides details such as how to initiate arbitration, who may be a member of the board of arbitration, how arbitrators are appointed, when briefs are due, and other purely procedural issues. We agree with the Second Circuit, who reviewed a similar clause and held that "by its terms, the prefatory clause does not limit the scope of the arbitration clause but rather establishes a limitation on when a judicial action may be brought under the Agreement." ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 31 (2d Cir. 2002). The Attached Clause here is a procedural clause that addresses how issues are arbitrated and when judicial action may be brought under the Treaty, but it does not manifest an intent to limit the scope of the parties' broad agreement to arbitrate "any irreconcilable dispute."

Even if the Attached Clause was an attempt to limit the scope of issues subject to arbitration, NAICO could at best argue that there is a conflict between the broad, unlimited provision in the Treaty and the first sentence of the Attached Clause. Since "'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'" we must resolve such a conflict in favor or arbitration. Spahr, 330 F.3d at 1269-70 (quoting Moses, 460 U.S. at 24-25). For these reasons, we conclude that the Treaty contains a broad arbitration clause requiring, at a minimum, that any irreconcilable dispute relating to the Treaty be

-6-

arbitrated.

The record provides ample evidence that NAICO's allegations are related to the Treaty. For one thing, the Hold Harmless Agreement and the Treaty relate to the same subject matter: the Bonds. Also, the Hold Harmless Agreement, the source of NAICO's allegations, specifically states that it was entered into in connection with the Treaty and "solely to facilitate the issuance of [the Bonds.]" Aplt. App., at Tab No. 21, Ex. A, at 1. This language clearly indicates that SCOR only agreed to act as co-surety on the Bonds as part of the underlying reinsurance transaction memorialized in the Treaty. This makes sense, since SCOR is primarily in the business of providing reinsurance, not signing co-surety obligations.

The Hold Harmless Agreement's reference to the Treaty is also evidence that the agreements are closely related. Courts have noted that when two agreements are at issue, one with an arbitration clause and one without, the fact that one agreement references the other supports arbitrating claims arising from either agreement. See, e.g., Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1068-69 (5th Cir. 1998) (holding that a series of letter agreements with cross-references show their interrelation for purposes of compelling arbitration); Neal v. Hardee's Food Systems, Inc., 918 F.2d 34, 37 (5th Cir. 1990) (holding that two "individual agreements were integral and

interrelated parts of one deal" where they referenced each other, were signed by the same parties, and were executed contemporaneously as part of one general transaction). In the instant case, the Hold Harmless Agreement references SCOR's reinsurance obligation under the Treaty. Aplt. App., at No. 21, Ex. A (stating "WHEREAS, [SCOR] has agreed to reinsure [NAICO] pursuant to certain reinsurance treaties," it agrees to act as co-surety for the Bonds.) It also explicitly states that SCOR signed the Hold Harmless Agreement "to facilitate" the Bonds that the Treaty reinsured. Id. Thus, the two agreements are more than related; they are dependent on each other.

In addition, SCOR sent a letter to NAICO dated November 2, 1999, stating that SCOR's participation as co-surety should be "construed to be reinsurance under the reinsurance agreements . . . and subject to the terms contained therein." Aplt. App., Tab No. 21, Ex. C. These "terms" would include the Treaty's arbitration provision. NAICO does not contend that it manifested any timely objection to SCOR's characterization of its co-surety obligation. For all these reasons, we conclude that the agreements are best interpreted as two interdependent agreements part of a single transaction. However, at a minimum, they are sufficiently related to invoke the Treaty's arbitration clause.

Notwithstanding the link between the two obligations, NAICO argues that its claims are not subject to arbitration because the Hold Harmless Agreement

-8-

does not contain a separate arbitration clause. We have rejected the notion that disputes arising out of an agreement that lacks an arbitration clause are *ipso facto* not subject to the arbitration clause of a related contract. See ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (holding that a dispute arising out of an agreement that lacked an arbitration clause was still subject to arbitration based on the broad arbitration provision contained in other agreements relating to the same joint venture). Of course, sophisticated reinsurers represented by counsel can explicitly opt out of broad arbitration clauses, thus negating the legal preference for arbitration in closely annexed transactions. But here, NAICO agreed to be bound by the Treaty's broad arbitration clause which encompasses the allegations that NAICO now seeks recovery for. For these reasons, we hold that NAICO's complaint must be dismissed and its claims must be arbitrated.

REVERSED.