**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RODNEY MCCAULEY; JERI
MCCAULEY; GARRISON
MCCAULEY; MADISON
MCCAULEY; WHITNEY
MCCAULEY,

        Plaintiffs - Appellees,

    v.

HALLIBURTON ENERGY
SERVICES, INC., a Delaware
corporation,

        Defendant - Appellant.

No. 05-6011
(D.C. No. 04-CV-807-F)
(W. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.


    Halliburton Energy Services, Inc. invokes our jurisdiction under 9 U.S.C.

§ 16(a)(1)(C) to appeal the denial of its motion to compel arbitration of a claim

for negligence and loss of consortium filed by Rodney McCauley, his wife, and

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his three children (McCauley, collectively). Halliburton contends these claims are subject to arbitration under the Halliburton Dispute Resolution Program (HDRP). After careful analysis of the terms of the HDRP and the issues raised by the parties, the district court held those claims are not governed by the program. We agree and affirm.[1]

For 19 years, Rodney McClauley was employed by Halliburton as a Senior Electronics Technician. He also independently owned and operated McCauley Insulation (MI) as a sole proprietorship. On December 2, 2002, Halliburton hired MI to spray foam insulation on the exterior of one of Halliburton's bulk tanks. Rodney asserts he asked Halliburton to transport the tank to another location where he had the proper equipment to do the job, but Halliburton insisted he do the work in its yard.[2]

---

[1] Another panel granted Halliburton's motion to stay the proceedings in the district court. *McCauley v. Halliburton Energy Servs., Inc.,* 413 F.3d 1158 (10th Cir. 2005). Recognizing "[w]hether an interlocutory appeal from the denial of a motion to compel arbitration divests a district court of jurisdiction to proceed on the merits of the underlying claim while the appeal is pending is a question of first impression in this circuit," the panel looked to sister circuits which had split in their responses. Following the Seventh and Eleventh Circuits and related precedent here, see *e.g. Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990), the court held "the district court is divested of jurisdiction while a *non-frivolous* § 16(a) motion is pending." *Id.* at 1162 (emphasis added).

[2] Only to give context to the issues on appeal, we recite certain uncontested facts stated in the briefs.

After Rodney finished his regular Halliburton work for the day, he picked up his MI equipment and returned to the Halliburton yard. Waiting for him was not the equipment Halliburton promised, but instead a forklift with a wooden pallet for Rodney to stand upon which had neither safety railings nor a safety harness. In the process of spraying the insulation, Rodney fell and was injured.

The McCauley family filed a complaint asserting four causes of action. Their first, third and fourth causes asserted negligence, intentional infliction of emotional distress, and loss of consortium arising from Rodney's fall. The second cause asserted wrongful termination, fraud and deceit, and the third cause asserted intentional infliction of emotional distress against Halliburton as Rodney's employer.

Halliburton moved to compel arbitration of all claims, contending that as a Halliburton employee, Rodney had agreed to resolve all work-related claims under the HDRP. In response, McCauley conceded the second and third causes of action were subject to arbitration, but the remaining claims were not.

Nonetheless, Halliburton argued those claims were intimately interwoven with the arbitrable claims. Thus, it asserted, Rodney's employment relationship with Halliburton as well as principles of judicial economy demanded resolution of all of the McCauley claims in one efficient "arbitral forum." In opposition, McCauley maintained those claims stemmed from an incident which occurred

while he was performing work as an independent contractor, not while working as an employee of Halliburton. Further, McCauley asserted Rodney's wife and children were not parties to the HDRP; therefore, their claims cannot be subjected to arbitration.

The district court granted, in part, but rejected, in part, Halliburton's motion to compel. Although the court recognized the strong federal policy favoring arbitration, it determined the court, and not an arbitrator, must decide whether the parties had agreed to arbitrate. Although recognizing that arbitrability is a matter of contract and that a party cannot be compelled to arbitrate a dispute he has not agreed to submit to that process, the court was mindful of the over-arching federal policy favoring arbitration. Agreeing with Halliburton and noting McCauley's concession, the court held all of the McCauley claims for wrongful termination, fraud and deceit set out in the second cause, as well as for the claim of intentional infliction of emotional distress contained in the third cause, fell within the HDRP. The court reasoned all of those claims are arbitrable because they "relate to and arise out of McCauley's former employment relationship with Halliburton." It then granted Halliburton's motion to compel arbitration of those claims.

The court, however, refused to compel arbitration of the negligence claim because it "is not rooted in any acts or omissions by McCauley as an employee or

-4-

by Halliburton [as an] employer."  Quoting the HDRP's language on the scope of the agreement and the definition of "Dispute,"[3] the court stated,

> A fair reading of the HDRP, broad in scope though it may be, is that, to be encompassed by the HDRP, a dispute must in some operative respect, be rooted in the *employment* relationship . . . .  The distinction between employment and independent contracting was, it is safe to assume, well known to the Halliburton lawyers who drafted the HDRP.  If they had intended the HDRP to cover any conceivable claim, even one arising entirely from an independent contractor relationship which was altogether distinct from the employment relationship, they could have written the document to say that, but they did not do so in the HDRP.  As to the arbitration of McCauley's status as an independent contractor, the court concludes that Halliburton is not entitled to recast McCauley's claims, as pled, and then compel McCauley to arbitrate the matter if he takes issue with Halliburton's recasting of his claims.  The negligence claim, as pled by McCauley, does not touch upon McCauley's employment relationship with Halliburton.  Nor is the claim, as argued by Halliburton, inextricably intertwined or related with the employment related claims.

(emphasis in original).

The court added the loss of consortium claims "are derivative of the negligence claim" and do not arise out of the employment relationship.  It is from that judgment Halliburton appeals.

---

[3]     The HDRP states "dispute":

> means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . . including, but not limited to any matter with respect to . . . any personal injury allegedly incurred in or about a Company workplace.

This interlocutory appeal is governed by 9 U.S.C. § 16(a)(1)(C), which permits review of the denial of a motion to compel arbitration under the Federal Arbitration Act. Determining the correctness of that denial *de novo* is confined to principles of contract. *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003). "While federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a creature of contract. Because an arbitrators' authority arises only when the parties agree in advance to that forum, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Whether the HDRP applies to a particular type of controversy is a question for the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

We have set out the process of review in a number of cases. First, we examine "the scope of that agreement and then determine whether plaintiffs' claims fall within its scope." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004). "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry." *Louis Dreyfus*, 252 F.3d at 224. In *Cummings v.*

-6-

*Fedex Ground Package Sys., Inc.,* 404 F.3d 1258, 1262 (10th Cir. 2005), we

followed the Second Circuit's *Dreyfus* analysis, explaining:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow.  Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.  Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.  Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered *if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.*

*Cummings,* 404 F.3d at 1262 (emphasis added) (internal citations and quotations

omitted).

Here, the HDRP states:

The plan is designed to provide a program for the quick, fair, accessible, and inexpensive resolution of *Disputes between the Company and the Company's present and former Employees* and Applicants for employment, related to or *arising out of a current, former or potential employment relationship* with the Company.

(emphasis added).

Against this background, Halliburton now contends the plain text of the

HDRP embraces McCauley's remaining claims, and, even if that reading was not

readily apparent, the liberal federal policy favoring arbitration preserves it.

Further, it maintains the HDRP is not limited to disputes between Employees and

Halliburton.  Instead its language that it is "intended to create an exclusive

procedural mechanism for the final resolution of all Disputes falling within its terms" reflects a clear intention to resolve "all disputes between the parties regardless of whether they relate to or arise out of the employment relationship." Moreover, the negligence claim - under any reading - "touches" the employment relationship. Halliburton points to the fact that Rodney was an employee for 19 years and continued to work for Halliburton. It reminds McCauley alleged he had to undertake the unsafe operation because he was "both an employee and sole proprietor." Thus, but for his employment with Halliburton, he would not have undertaken the work. Surely, this allegation satisfies "the low standard that his employment relationship touch" his claim.[4]

Halliburton urges the root of the court's error was concluding the claim must arise from the HDRP. "This is not the test for arbitrability," it insists, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, n.13 (1985), for the broad proposition that federal policy presumes the inclusion of all such claims.[5] Only by imposing the "artificial standard" of independent

---

[4] Rodney contends accepting the job for MI was a "Hobson's choice." He feared loss of either his regular job or future business for MI if he refused.

[5] *Mitsubishi* addressed whether claims arising under the Sherman Act in an arbitration clause in an agreement embodying an international commercial transaction are subject to arbitration under the FAA and Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The entire footnote Halliburton cites reads:

(continued...)

contractor status to "effectively revers[e] the presumption in favor of arbitration" could the district court abridge the sweep of the HDRP. Instead, Halliburton states arbitration must be required "if the agreement can be interpreted in any way to cover the claim." Thus, Halliburton argues the claims of Rodney's wife and children are also swept within the HDRP, citing, *Farmers & Merchants Bank v. Hamilton Hotel Partners of Jacksonville*, 702 F. Supp. 1417, 1425 (W.D. Ark. 1988) (holding a non-signatory trustee who opened the account for plaintiff and acted on his behalf is bound by the arbitration agreement).[6]

Finally, Halliburton alleges error in the court's resolving Rodney McCauley's independent contractor status. It contends that is a fact issue entangled in the merits of the dispute and a gateway issue that should be reserved for the arbitrator, citing *Howsam,* 537 U.S. at 84 (gateway issues are whether the

---

[5](...continued)
> Contrary to Soler's suggestion, the exclusion of some areas of possible dispute from the scope of an arbitration clause does not serve to restrict the reach of an otherwise broad clause in the areas in which it was intended to operate. Thus, insofar as the allegations *underlying the statutory claims* touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability.

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc, 473 U.S. 614, 625* n. 13 (1985) (emphasis added).

[6]     It also cites *Bombalier v. Lifemark Hosp. of Fla.,* 661 So.2d 849, 852 (Fla. App. 1995), a case we disregard because of its reliance upon a Florida law that is irrelevant to this case.

parties are bound by a given arbitration clause and whether arbitration clause applies to a particular controversy).[7]  Thus, Halliburton adds, already in the outer limit of its authority when it found the dispute had to be rooted in the employment relationship, the court - at that point - should have referred the entire matter to the arbitrator.  Instead, it improperly resolved a disputed issue of fact which touched on the merits of the action before the arbitrator.  Further, that finding was based solely on the "mere allegations" of the complaint without an evidentiary hearing.[8]

McCauley asserts Halliburton never disputed his status when he performed the outside work as the sole proprietor of McCauley Insulation.  Indeed, in its discovery response, Halliburton admitted:  "Rodney Earl McCauley and/or McCauley Insulation was hired as an independent contractor by Halliburton Energy Service, Inc. to perform work [] on December 2, 2002."  On that date, McCauley contends Rodney applied foam to a tank as an outside independent contractor, but, while fortuitous that Rodney also worked for Halliburton,

---

[7]     *Howsam* held the gateway procedural issues for the arbitrator "'which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  It noted, for example, an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964); and allegations of waiver, delay, or a like defense to arbitrability, *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24-25 (1983).

[8]     McCauley cites Halliburton's trial court filings and maintains Halliburton never disputed his status as an independent contractor status or sole proprietorship until this appeal.

McCauley asserts there is no relationship between applying foam and his work as an Electronics Technician, contending Halliburton's reading of the sweep of the HDRP would snag an ex-employee driving his family in his family car and hit by a Halliburton truck.

Controverting Halliburton's contention for an expansive scope for the HDRP, McCauley quotes an "explainer" to the HDRP which states: "[the HDRP] is designed for use by employees at every level of the Company, for almost any work-place related conflict." Also, McCauley cites a brochure which commends the HDRP to work "for the benefit of all - the employees and the Company." These provisions, McCauley asserts, bear no other meaning than the HDRP applies to disputes between the employee and employer which relate to or arise out of the employment relationship. Otherwise, McCauley maintains under the overall contract, "the requisite clear and unmistakable evidence" the parties intended to submit the matter to an arbitrator is absent here. *Spahr,* 330 F.3d at 1270 (plaintiff's mental capacity is a question for the court, not arbitrator, in deciding motion to compel arbitration).

Resolving these contentions, we start with the instruction in *Howsam* that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam,* 537 U.S. at 84. The district court properly addressed the issue and concluded the

-11-

HDRP circumscribes a relationship between the employee and Halliburton in disputes arising out of that relationship. Although both sides have treated us to a great deal of Oklahoma contract law and Tenth Circuit cases addressing the issue, we think the test in *Cummings* guides us. 404 F.3d at 1262. The HDRP includes, such as here, a broad arbitration clause where there arises a presumption of arbitrability "and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." 404 F.3d at 1262. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc.* 475 U.S. at 648 (quotations omitted).

Two factors are of significance in determining whether the McCauleys are contractually bound to arbitrate their negligence claim. First, the HDRP clearly evinces Halliburton's intent to make the plan's terms applicable to disputes between the company and its employees for matters "related to or arising out of a current, former or potential employment relationship with the Company." Second, the plan defines "dispute" as claims "between persons bound by the Plan . . . with respect to . . . the relationship between the Employee and the Company." These provisions are not so broad as to sweep within the plan's structure a sole proprietor and his family and force them to arbitrate a claim justiciable in court.

-12-

Halliburton's late-game attempt to inject into this case a question of whether

Rodney was acting as a sole proprietor should not change that outcome. We will

not consider a new theory on appeal, even one "that falls under the same general

category as an argument presented at trial or . . . a theory that was discussed in a

vague and ambiguous way" at trial. *Bancamerica Commercial Corp. v. Mosher

Steel of Kan., Inc.*, 100 F.3d 792, 798-99 (10th Cir. 1996) (quotation omitted), *op.

amended on other grounds*, 103 F.3d 80 (10th Cir. 1996). "[T]o preserve the

integrity of the appellate structure, we should not be considered a 'second shot'

forum . . . where secondary, back-up theories may be mounted for the first time."

*Tele-Communications, Inc. v. Comm'r,* 104 F.3d 1229, 1233 (10th Cir. 1997).

Neither McCauley Insulation nor the McCauley family was a party to the

HDRP; nor are their negligence and loss of consortium claims grounded in

Rodney's status as an employee of Haliburton. We disagree with Halliburton that

its Dispute Resolution Plan could be read to include them. The district court's

analysis was correct, and it committed no error in holding those claims cannot be subjected to arbitration.[9]

**AFFIRMED**.

Entered for the Court

John C. Porfilio
Senior Circuit Judge

---

[9] The parties argue a number of other issues which we do not address because they are collateral and not consequential to the issue of whether mandatory arbitration was properly denied.